# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXANDER OTIS MATTHEWS,<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION,<br><br>*Defendant*. | Civil Action No. 15-569 (RDM) |

## MEMORANDUM OPINION AND ORDER

Despite the multitude of briefs, opinions, and orders in this nearly three-year-old case, before the Court are two motions requesting an extension of time to pay the initial filing fee. Dkt. 38; Dkt. 40. For the reasons explained below, the Court will construe these motions as requests under Federal Rule of Civil Procedure 59(e) to alter or amend the Court's earlier dismissal of this action, coupled with requests under Federal Rule of Civil Procedure 6(b) for an extension of time. The Court will **GRANT** the motion docketed by the Court on July 31, 2017, **DENY** as moot the motion docketed by the Court on July 6, 2017, and set a new deadline for payment of the filing fee.

The Court begins by briefly explaining how this situation came to be. In the reply brief filed by Defendant Federal Bureau of Investigation ("FBI") in support of its motion for summary judgment, the FBI asserted for the first time that *pro se* prisoner plaintiff Alexander Otis Matthews had accumulated more than three "strikes" under 28 U.S.C. § 1915(g) before initiating this action. Dkt. 28; *see also* Dkt. 35 at 1. The Court dismissed the case, Dkt. 31, but later vacated that opinion on the ground that, after finding a three-strike violation, a court should

generally permit the plaintiff an opportunity to pay the full filing fee before outright dismissal, Dkt. 35. On May 5, 2017, the Court ordered Matthews to pay the full filing fee on or before June 5, 2017. *Id.* at 10. Having not timely received the fee, on June 12, 2017, the Court dismissed the action without prejudice for failure to prosecute. Dkt. 36.

On June 19, 2017, the Clerk of Court received a money order sent on Matthews's behalf purporting to pay the full $400 filing fee. *See* Dkt. 37 at 1. The money order was dated June 15, 2017, and sent alongside a cover letter dated June 16, 2017. *Id.* The money order was therefore placed in the mail a minimum of eleven days after the deadline for payment. *Id.* The Court held that Matthews had not shown good cause for his late payment under Rule 6(b), nor had he demonstrated sufficient grounds for relief from the Court's final judgment under Rule 60(b). *Id.* Accordingly, the Court ordered that the Clerk return the money order to the sender. *Id.* at 2.

On July 6, 2017, the Clerk of Court received a motion from Matthews seeking an enlargement of time to pay the filing fee. Dkt. 38. Matthews dated the motion June 30, 2017, the prison stamped it as having been reviewed on July 2, 2017, and the postmark is dated July 3, 2017. *See id.* at 7–9. In that motion, Matthews alleges that he had previously sent two motions seeking an extension of time to pay the filing fee, but prison officials prevented the Court's timely receipt of the filings. *Id.* at 1–2. He states that in the aftermath of his son's death, he applied for a furlough to attend the funeral. *Id.* at 2. However, the Bureau of Prisons ("BOP") denied the request, and instead placed him in the Special Housing Unit ("SHU") on May 16, 2017, while it conducted an investigation of an "alleged irregularity" in his furlough paperwork. *Id.* at 2–3. He argues that he attempted to send a motion for an extension of time to pay the filing fee while in the SHU on May 18, 2017, that should have been received within the Court's

original payment deadline. *Id.* at 3. Matthews states that around that time he also sent a letter to his family requesting that they pay the fee.¹ *Id.*

Matthews presumed that the letters had been sent, until at some point during the first week of June 2017 he was questioned by BOP investigators about the "irregularities" on his application for furlough. *Id.* at 3–4. According to Matthews, while he was being questioned, he "observed in an open file being reviewed by [the investigator] the letters to the Court and to his family that [he] had mailed on May 18[], 2017." *Id.* at 4. Matthews states that he then sent a second motion for an extension of time to the Court after this discovery, and included information regarding the delay in processing his mail. *Id.* Neither motion was docketed prior to the July 6, 2017 motion.²

On July 13, 2017, the Court ordered the government to respond to Matthews's July 6, 2017 motion. Minute Order (July 13, 2017). In opposing the motion, the government does not contradict any of the factual allegations made regarding his mail, but rather argues "that he has no grounds for reconsideration" of a final judgment under *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Dkt. 39 at 1; *see id.* at 1–3. On July 31, 2017, the Court docketed a further motion for an enlargement of time to pay the filing fee from Matthews. Dkt. 40. Matthews dated this motion June 6, 2017, and it was received by the Clerk of Court on June 12, 2017. *Id.* at 1, 8. It appears to be the second of the motions sent from the SHU that Matthews

---

¹ This letter appears to have eventually led to the mailing of the $400 money order received on June 19, 2017.

² Although Matthews was free, given that the Court dismissed the case without prejudice, to file a new complaint containing the same allegations, he requests that the Court accept the fee and "not make him begin this action anew" because "[i]t would be too difficult for the plaintiff based on his current situation, with no typewriter and difficult access to the [l]aw [l]ibrary." Dkt. 38 at 6. He also asks the Court to investigate or refer for investigation the alleged mail tampering. *Id.* at 5.

3

referenced in the filing received on July 6, 2017.  It makes the same allegations as the July 6, 2017 motion, but also lays out in greater detail Matthews's request that the Court refer the alleged interference with his mail to the Postal Service's Inspector General.  *Id.* at 7.

Finally, on August 7, 2017, Matthews filed a reply to the government's opposition to his July 6, 2017 motion.  Dkt. 41.  He notes that a motion similar to those he filed in this Court was granted in a habeas action he filed in the District of New Hampshire, and he reiterates his request that the case not be closed because of his concern that starting the action over again would deny him any chance of accessing the information he seeks prior to the resolution of that habeas petition.  *Id.* at 2–3.

Before turning to the merits of Matthews's arguments, the Court briefly addresses the tangle of dates relevant to the two motions presently before the Court.  As noted above, the motion received and docketed on July 6, 2017, Dkt. 38, was in fact received *after* the motion docketed on July 31, 2017, Dkt. 40.  That later-docketed motion was received by the Clerk of Court on June 12, 2017, Dkt. 40 at 1, the same day the Court issued its order dismissing the case for failure to pay the filing fee, Dkt. 36.  Further complicating the situation, the dates on which the motions were received are not in fact the dates on which the motions were filed, because the "prison mailbox rule" requires the Court treat a *pro se* prisoner motion as filed once the prisoner turns the document over to prison officials for mailing.  *See Blount v. United States*, 860 F.3d 732, 741 (D.C. Cir. 2017).  Neither party addresses when exactly these motions were "delivered . . . to the prison authorities for forwarding to the court clerk," *Houston v. Lack*, 487 U.S. 266, 276 (1988), but given when the documents were received, it appears they were mailed soon after Matthews dated them.  Ultimately, however, this knot can be left alone, because even construing the case's chronology in the manner *least* favorable to Matthews, he still prevails.

4

To explain why, the Court begins by examining the legal bases for Matthews's motions. Matthews has not clearly articulated the Rule or Rules under which he moves to reopen the Court's judgment dismissing this case. Given the prison mailbox rule, both motions were filed within twenty-eight days of the Court's June 12, 2017 order dismissing the case, but after the June 5, 2017 deadline for payment of the filing fee.[3] *Compare* Dkt. 35 (setting payment deadline of June 5, 2017), *with* Dkt. 38 (requesting extension of time no earlier than June 30, 2017), *and* Dkt. 40 (requesting extension of time no earlier than June 6, 2017). For that reason, the Court construes them as motions under Rules 59(e) and 6(b) in which Matthews seeks to vacate the dismissal of the action and requests an extension of time to pay the filing fee. *See Emory v. Sec'y of Navy*, 819 F.2d 291, 293 (D.C. Cir. 1987) (holding the treatment of a filing as a Rule 59(e) motion to be "appropriate even though the movant does not specify under which rule relief is sought, because [a]ny motion that draws into question the correctness of the judgment is functionally a motion under Civil Rule 59(e), whatever its label" (internal quotation marks and citation omitted)); *McMillian v. District of Columbia*, 233 F.R.D. 179, 179 n.1 (D.D.C. 2005) (in a similar situation in which relief was sought from dismissal of a case for having missed a deadline for showing cause, treating a motion for an extension of time under Rule 6(b) as a motion under Rule 59(e)); *see also Firestone*, 76 F.3d at 1207–08 (describing a similar situation

---

[3] The motion docketed on July 31, 2017, was filed (under the prison mailbox rule) several days *before* the Court's order dismissing the case, albeit still after the deadline to pay the filing fee had passed. *Compare* Dkt. 40 at 1 (noting the motion was received on June 12, 2017), *and id.* at 8 (stating the motion was sent on June 6, 2017), *with* Dkt. 35 (ordering payment of the filing fee on or before June 5, 2017). Having filed such a request before judgment was entered does not, however, change the fact that the case was dismissed. Any motion seeking relief, therefore, requires that the judgment first be vacated, although the filing of a request for an extension of time *prior* to the Court's June 12, 2017 order further supports the Court's conclusion that relief is warranted.

5

in which motions under Rule 59(e) and Rule 15(a) acted in concert to seek relief from a court's earlier dismissal of the complaint).

A motion under Rule 59(e) "is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004) (internal quotation mark omitted). Such motions "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993), *as amended* (June 30, 1993) (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)). Relief under Rule 59(e) is generally unavailable for situations that "might have been avoided through the exercise of due diligence." *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004); *see also Ciralsky*, 355 F.3d at 673. In situations such as this one, the movant "must first satisfy Rule 59(e)'s more stringent standard," before then meeting the requirements of Rule 6(b). *See Firestone*, 76 F.3d at 1208 (describing analogous two-step analysis in context of Rule 59(e) and Rule 15(a) motions).

Matthews's motions meet the rigorous standard of Rule 59(e). The Court has been presented with information regarding the delay in its receipt of the filing fee that was unavailable at the time it issued its order dismissing this case. Matthews states that he attempted to request an extension of time and to arrange for the payment of the filing fee within the Court's earlier deadline, but was thwarted in his efforts because of the prison's delay in sending his mail while he was in the SHU. *See, e.g.*, Dkt. 38 at 1–6. Although the Court never received the extension request that Matthews asserts that he delivered to prison officials *before* the filing deadline, the government does not dispute Matthews's description of the relevant events. Dkt. 39 at 1–3.

6

That the government "does not believe that Plaintiff will be able to meet his burden on reconsideration," *id.* at 3, fails to address the substance of Matthews's motions.  While the Court is unable to assess fully the truth of Matthews's allegations, the timing of the Clerk's receipt of the filing fee from a third party and the Clerk of Court's receipt on June 12, 2017, of a motion dated June 6, 2017—which mirrors what Matthews described as having sent while in the SHU—corroborates his account.  Matthews's account of his efforts to comply with the Court's order in a timely manner, which the government does not challenge, weighs heavily in favor of vacating the judgment.

The Court is further persuaded by Matthews's argument that dismissing the suit and requiring him to start over would work an injustice because of the effect such a delay would have on other pending litigation.[4]  Dkt. 38 at 6.  Without venturing into whether Matthews is likely to be successful in getting the documents he seeks or whether such documents would be helpful in his other suit, the Court agrees that he has otherwise "been timely and diligent in prosecuting this action."  *Id.*  Given this litigation's lengthy history and the Court's familiarity with the unusual posture, the Court also agrees that requiring Matthews to start from scratch by filing a new complaint raises the possibility of further delay in the resolution of his claims.  Taken together, Matthews's motion is unlike the more typical Rule 59(e) case in which an attorney's neglect is found insufficient to warrant reopening a case.  *See, e.g.*, *McMillian*, 233 F.R.D. at 182.  His unrebutted allegations of delay beyond his control and the unfairness that would be worked by beginning again this three-year-old litigation suffice to meet Rule 59(e)'s demanding burden.

---

[4]  The Court notes that government counsel took the commendable step of assisting Matthews with photocopying and assembling the materials from this case to aid him refiling the action.

Having determined that Matthews meets the requirements of Rule 59(e), the Court next considers Rule 6(b). A Rule 6(b) motion requesting an extension of time made after time has expired may only be granted upon a showing of "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), the Supreme Court delineated four factors for evaluating whether a movant has demonstrated excusable neglect. Those factors are "(1) the danger of prejudice to the party opposing the modification, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003) (citing *Pioneer*, 507 U.S. at 395). The Court concludes that Matthews has satisfied this standard as well.

First, the government has not suggested any prejudice will result from granting Matthews additional time to pay the filing fee, nor could it given that denying the motion would essentially put the government in the same posture (albeit under a new docket number). The subject matter of this action and how it will likely be resolved—a request under the Freedom of Information Act and summary judgment, respectively—also weigh against a finding that accepting a delayed payment would prejudice the government. Second, the delay of eleven days in payment of the filing fee was brief. Dkt. 37. Moreover, this delay was Matthews's first late filing, and does not present the sort of "pattern that could, taken together, burden judicial proceedings." *See Cohen v. Bd. of Trs. of the Univ. of the D.C.*, 819 F.3d 476, 480 (D.C. Cir. 2016). Third, for the reasons described in the Court's analysis of Rule 59(e), Matthews has offered sufficient reason for the delay; indeed, although the motion never reached the Court, the Court credits Matthews's assertion that he attempted to file an extension motion before the deadline. Fourth, there is no

evidence of bad faith on Matthews's part.  Thus, all of the *Pioneer* factors weigh in favor of granting Matthews's Rule 6(b) request for additional time to pay the filing fee.  Having considered "all relevant circumstances surrounding the failure to act," the Court concludes that Matthews has met Rule 6(b)'s requirements.  *Id.* (internal quotation marks omitted).

## CONCLUSION

For these reasons, the relief sought in the motion docketed on July 31, 2017, Dkt. 40, is hereby **GRANTED**, and the motion docketed by the Court on July 6, 2017, Dkt. 38, is hereby **DENIED** as moot.  It is hereby **ORDERED** that the Court's June 12, 2017 Order dismissing the case, Dkt. 36, is **VACATED**.  It is further **ORDERED** that Matthews pay the balance of the filing fee on or before March 9, 2018, or the Court will dismiss the case without prejudice.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  January 30, 2018