# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALEXANDER OTIS MATTHEWS,

       *Plaintiff*,

    v.

FEDERAL BUREAU OF
INVESTIGATION,

       *Defendant*.

Civil Action No. 15-569 (RDM)

## MEMORANDUM OPINION AND ORDER

Alexander Otis Matthews, proceeding *pro se*, brings this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, action against the Federal Bureau of Investigation ("FBI"). Matthews pleaded guilty to bank fraud and wire fraud in July 2011. Dkt. 64 at 2. In March 2013, he submitted a FOIA request to the FBI, seeking all records about himself. Dkt. 53-5 at 2–3 (Hardy Decl. ¶ 5). The FBI processed some 671 pages of responsive documents, Dkt. 53-6 at 2–3 (Argall Decl. ¶ 4), before filing its first motion for summary judgment, Dkt. 53.

The Court granted that motion in part and denied it in part. Dkt. 64. As relevant here, the Court concluded that the FBI had failed to show that the FOIA waiver that Matthews executed as part of his plea agreement was enforceable, *id.* at 24–29 (citing *Price v. U.S. Dep't of Just. Att'y Off.*, 865 F.3d 676, 678 (D.C. Cir. 2017)), and failed adequately to justify some of its remaining withholdings under Exemptions 6, 7(C), and 7(D), *id.* at 14–21. The Court, accordingly, ordered that the FBI (1) produce the non-exempt, responsive documents that it had previously withheld based on the FOIA waiver in Matthews's plea agreement, and (2) provide additional information to justify its withholdings under Exemptions 6, 7(C), and 7(D). *Id.* at 29.

The FBI has renewed its motion for summary judgment.  Dkt. 89.  The FBI maintains that it has now adequately justified those withholdings for which the Court found its prior showing insufficient.  Dkt. 89-1 at 11–22.  The FBI separately argues that Plaintiff has failed to pay the fees associated with certain releases and has therefore failed to exhaust his administrative remedies with respect to those releases.  *Id.* at 22–24.

The Court will **GRANT** in part and **DENY** in part the FBI's renewed motion for summary judgment.  Although the Court concludes that some of the FBI's withholdings are supported by the current record, the FBI's submissions remain insufficient, in spite of this Court's prior admonitions, to justify many of its withholdings.  To be sure, the agency may well be able to support its invocation of the various exemptions at issue.  But, unfortunately, this is a case in which the government's repeated failure to substantiate its claims has needlessly created more work for all involved.  And, as for the FBI's exhaustion argument, it is undisputed that Matthews has, in fact, paid the relevant processing fees for three releases since the Court's prior opinion—the July, August, and September 2019 releases.  Because the FBI does not argue that Matthews delay in making those payments constituted an incurable default, its exhaustion argument is unavailing with respect to those releases.

## I.  BACKGROUND

### A.      Factual Background & Initial Procedural History

Because this is not the Court's first opinion in this matter, *see* Dkt. 35 (Mem. Op. & Order); Dkt. 44 (Mem. Op. & Order); Dkt. 64 (Mem. Op. & Order), the Court will recount only those facts necessary to resolve the FBI's most recent motion.

In July 2011, Matthews pleaded guilty to one count of wire fraud and one count of bank fraud in response to a consolidated indictment in the Eastern District of Virginia.  *See* Dkt. 24-1

at 57–58 (Plea Agreement ¶¶ 1a–1b); Dkt. 53-4 at 2 (Faulconer Decl. ¶¶ 2b–2c, 2e–2f).  As part

of that plea agreement, Matthews waived his right to file a FOIA request for documents relating

to his prosecution.  Dkt. 24-1 at 62 (Plea Agreement ¶ 6).  In October 2011, Matthews was

sentenced to a 120-month term of incarceration and ordered to pay $5 million in restitution.  Dkt.

53-4 at 3 (Faulconer Decl. ¶ 2g).  He later filed a petition for collateral relief pursuant to 28

U.S.C. § 2255, alleging that his counsel had failed to disclose an early plea offer made by the

government.  *See* Dkt. 59.  The sentencing court denied that petition.[1]

On March 1, 2013, Matthews filed a FOIA request with the FBI, seeking records about

himself.  Dkt. 53-5 at 2–3 (Hardy Decl. ¶¶ 5–6).  According to Matthews, he filed this request in

hopes of supporting his claim that an Assistant United States Attorney ("AUSA") from the

Eastern District of Virginia falsely represented during Matthews's § 2255 proceedings that no

early plea offer was ever presented to his counsel.  Dkt. 59 at 1–2.  In response, the FBI

processed 671 pages, releasing 35 pages in full and 272 pages in part, while withholding 364

pages in full.  Dkt. 53-6 at 3–4 (Argall Decl. ¶ 4).  In support of its withholdings, the FBI

invoked Privacy Act Exemption (j)(2) and FOIA Exemptions 3, 5, 6, 7(C), 7(D), and 7(E).  *Id.*

In April 2015, Matthews filed this lawsuit, challenging the adequacy of the FBI's

response to his FOIA request.  Dkt. 1 at 1 (Compl.).  The FBI moved to dismiss or, in the

alternative, for summary judgment, arguing that Matthews had failed to pay his FOIA processing

fees or to seek a fee waiver and thus failed to exhaust his administrative remedies.  Dkt. 12.  The

FBI subsequently notified the Court, however, that Matthews had (belatedly) paid the processing

fees, Dkt. 17, and the FBI thus agreed to "process the records and release nonexempt records to

---

[1] Matthews transitioned to a halfway house in 2018, Dkt. 57, and subsequently filed a notice of change of address, listing a private residence.  Dkt. 65; *see also* Dkt. 91 (listing another address).

Plaintiff," Dkt. 15 at 4.  The Court, accordingly, denied the FBI's motion as moot.  *See* Minute

Order (Oct. 8, 2015).

In January 2016, the FBI again moved for summary judgment, Dkt. 24, arguing that

Matthews was prohibited from proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915(g),

Dkt. 28 at 2.  The Court agreed and dismissed Matthews's action without prejudice.  Dkt. 31.

Matthews, then, moved for reconsideration.  Dkt. 32.  Although the Court was unpersuaded by

the argument that Matthews pressed, the Court modified its earlier decision to provide Matthews

with the option of paying the filing fee and thus proceeding with the pending action.  Dkt. 35 at

10.  The Court received Matthews's filing fee in February 2018.  *See* Receipt of Filing Fee (Feb.

21, 2018).  Thereafter, the FBI filed its third motion for summary judgment.  Dkt. 53.

## B.    Prior Summary Judgment Decision

The Court granted in part and denied in part the FBI's third motion.  The Court

concluded that the FBI had shown that it had conducted an adequate search, Dkt. 64 at 7–8, and

that the agency properly invoked most of the exemptions upon which it relied, *see id.* at 9–10

(Exemption 3), *id.* at 10–13 (Exemption 5), *id.* at 21–23 (Exemption 7(E)).  Two sets of

exemptions required further scrutiny, however—those made under Exemption 6 and 7(C), and

those made under Exemption 7(D).

Exemption 6 applies to "personnel and medical files and similar files the disclosure of

which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C.

§ 552(b)(6), while Exemption 7(C) applies to records "compiled for law enforcement purposes"

if their release "could reasonably be expected to constitute an unwarranted invasion of personal

privacy," *id.* § 552(b)(7)(C).  The Court had little trouble concluding that Exemption 7(C)

shielded certain of the records withheld by the FBI, such as "the names and identifying

information" of private individuals and agency employees identified within "Matthews's main investigative file." Dkt. 64 at 15. But the disputed records also included Matthews's "197 file," which the FBI created in response to a Federal Tort Claims Act ("FTCA") claim Matthews filed against the FBI. *See* Dkt. 53-6 at 23 (Argall Decl. ¶ 44 n.19). The FBI failed to demonstrate that the file was "compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), and, thus, failed to carry its burden under Exemption 7(C). Dkt. 64 at 15–16. And, although Exemption 6 applies more broadly to "personnel[,] medical files[,] and similar files," 5 U.S.C. § 552(b)(6), the FBI's reliance on that exemption fell short as well. In particular, the FBI's motion and supporting material lacked sufficient information to allow the Court to determine whether the disclosure of the personal information in that file "would constitute a *clearly unwarranted* privacy invasion." Dkt. 64 at 16 (quoting *Jud. Watch, Inc. v. U.S. Dep't of State*, 282 F. Supp. 3d 36, 49–50 (D.D.C. 2017)). The FBI's evidence did not, for example, "offer any details about which categories of individuals appeared in the 197 file, or the types of records from which the names and identifying information were redacted." *Id.* at 16–17. Because the Court could not "ascertain whether the release of these names and identifying information would compromise a substantial privacy interest," the Court denied "summary judgment as to the FBI's withholdings based on Exemption 6 in the 197 file." *Id.* at 167. The Court did, however, "provide the agency with an opportunity to make a more particularized showing." *Id.*

A similar flaw precluded the Court from granting the FBI's motion with respect to a subset of withholdings under Exemption 7(D). That exemption protects "records or information compiled for law enforcement purposes" the release of which "could reasonably be expected to disclose the identity of a confidential source" or "information furnished by a confidential source," 5 U.S.C. § 552(b)(7)(D). Invoking Exemption 7(D), the FBI withheld documents

relating to an informant who agreed to an informal proffer, along with documents containing the identifying information about seven other individuals who provided "non-public information" and who were "in positions to have unique access to and/or knowledge" about the criminal investigation which led to Matthews's charges.  Dkt. 53-6 at 33–34 (Argall Decl. ¶ 59(a)–(b)). The FBI had shown that it "properly invoked Exemption 7(D) with respect to" the informant who agreed to the informal proffer, in part because of the seriousness of Matthews's crime and informant's close relationship with the target of the investigation. Dkt. 64 at 19–20.  But, with respect to the remaining seven individuals, the FBI "merely recite[d], in boilerplate fashion, that these individuals were 'in positions to have unique access to and/or knowledge about the targets of the investigation.'"  *Id.* at 20 (quoting Dkt. 53-6 at 34 (Argall Decl. ¶ 59(b)).  Because such rote statements were insufficient to "show that each of these seven sources operated under an implied understanding of confidentiality," the Court denied "summary judgment as to the FBI's withholdings on the basis of implied confidentiality for the seven informants." *Id.* at 20.  But, as with the Exemption 6 withholdings, the Court "provide[d] the agency with an opportunity to make a more particularized showing." *Id.*

The Court then turned to the enforceability of the FOIA waiver in Matthews's plea agreement.  Based on that waiver, the FBI had declined to process some relevant files, including "those investigative files resulting in [Matthews's] wire fraud and bank fraud prosecutions" and "the related motion to vacate [his] sentence."  *Id.* at 24–25 (alterations in original) (quoting Dkt. 53-6 at 10–11 (Argall Decl. ¶ 20)).  The Court rejected the FBI's reliance on the waiver because the agency failed to articulate "any legitimate criminal justice interest served by Matthews's FOIA waiver."  *Id.* at 28; *see also Price v. U.S. Dep't of Just. Att'y Off.*, 865 F.3d 676, 683 (D.C. Cir. 2017) (holding that such waivers are unenforceable unless they further a legitimate criminal

justice interest).  The Court, accordingly, denied summary judgment as to those documents withheld based on Matthews's FOIA waiver.  *Id.* at 29.

## C.     Subsequent Procedural History

After the Court issued its decision, the FBI made two sets of supplemental productions—one in response to this Court's conclusion that the FBI had failed to carry its burden with respect to Exemptions 6, 7(C), and 7(D), and one in response to this Court's holding that the FBI had failed to justify its reliance on the FOIA waiver contained in Matthews's plea agreement.

First, the FBI re-processed 18 pages from Matthews's 197 file, releasing 13 pages in full or in part, while continuing to withhold the remaining material pursuant to Exemptions 6 and 7(C).  *See* Dkt. 89-2 at 8 (Seidel Decl. ¶ 16).[2]  The FBI separately reprocessed some material from Matthews's "main file," and, after consulting the Executive Office of United States Attorneys ("EOUSA"), withheld a portion of that material pursuant to Exemptions 6 and 7(C). Dkt. 89-2 at 8–9 (Seidel Decl. ¶ 16).  Because these records had been previously processed, the FBI provided the non-exempt material to Matthews at no charge.  *Id.*[3]

Next, in response to this Court's conclusion that the FBI had failed to justify its reliance on the FOIA waiver in Matthews's plea agreement, the agency "located approximately 5,620 potentially responsive pages that . . . require[d] processing."  Dkt. 68 at 1.  With respect to these records, the Court ordered that the FBI to "process approximately 500 pages of potentially

---

[2] The FBI also withheld material pursuant to Exemption 5, *see* Dkt. 89-2 at 8 & n.12 (Seidel Decl. ¶ 16 & n.12), but the Court has already concluded that those redactions were permissible, *see* Dkt. 64 at 12–13.

[3] The FBI does not appear to have re-processed or released any pages in response to the Court's conclusion that the agency had inadequately supported some of its withholdings under Exemption 7(D).  Dkt. 64  at 20.  Instead, the FBI has attempted to buttress its evidentiary support for those withholdings with a new declaration.  *See* Dkt. 89-2 at 17–21 (Seidel Decl. ¶¶ 38–46).

responsive documents per month and make monthly releases of any non-exempt records on the

last day of each month." Minute Order (June 4, 2019). These monthly productions began in July

2019. *See* Dkt. 89-2 at 4 (Seidel Decl. ¶ 8). As part of its first production, the FBI notified

Matthews that it "had located approximately 5,427 pages of records potentially responsive to

[his] request and [that] he would owe approximately $165.00 in duplication fees if all these

records were released." *Id.* at 5 (Seidel Decl. ¶ 8). This total would be allocated across the

entirety of the FBI's productions, however, and for the first monthly production Matthews owed

only $15.00. *Id.* The FBI warned Matthews, in an attachment, that "[f]ailure to pay for this

release within thirty (30) days from the date of this letter will close any pending FBI [FOIA]

requests from you." *Id.* at 27 (Seidel Decl., Ex. A).

     The FBI made additional releases in August 2019 and September 2019. *See id.* at 5–6

(Seidel Decl. ¶¶ 9–10). Both releases were accompanied by a letter that specified the amount

Matthews owed. *See id.* at 34 (Seidel Decl., Ex. B) (informing Matthews he owed $30.00

following August 2019 production); *id.* at 40 (Seidel Decl., Ex. C) (informing Matthews he owed

$45.00 following September 2019 production). Each letter included the same warning that

accompanied the July 2019 production: "Failure to pay for this release within thirty (30) days

from the date of this letter will close any pending FBI [FOIA] requests from you." *Id.* at 34

(Seidel Decl., Ex. B) (August 2019); *id.* at 40 (Seidel Decl., Ex. C) (September 2019) (same).

     Despite these warnings, Matthews failed to make the required payments, prompting the

FBI, on November 4, 2019, to "notif[y] the Court of its intent to cease processing records

responsive to Plaintiff's FOIA request" and to move the Court to modify its order "to relieve

Defendant of [its] obligation" to process and produce responsive documents on a monthly basis.

Dkt. 73 at 4. Matthew opposed the FBI's motion on the ground that he had (belatedly) paid the

$45.00 balance (on December 10, 2019) and that he "agree[d] to pay any future document production cost." Dkt. 77 at 1; *see id.* at 3 (copy of receipt). While that motion was pending, the FBI did not make any productions in October 2019, November 2019, December 2019, or January 2020. When Matthews made the $45.00 payment, he became current on his payments for the FBI's July 2019, August 2019, and September 2019 productions.

The Court, accordingly, granted in part and denied in part the FBI's motion to modify. *See* Minute Order (Jan. 6, 2020). Because "Plaintiff had failed to pay the processing fees related to this FOIA request until December 10, 2019," the Court found that "good cause exist[ed] to retroactively modify the [its] Minute Order with respect to the productions that had been scheduled for October 2019, November 2019, December 2019, and January 2020," relieving the FBI of its 500-page per month processing obligation for this period. *Id.* "However, given that Plaintiff ha[d] now paid the processing fees," the Court clarified that the FBI was "not absolved of its future production obligations" and ordered "that the Defendant [] recommence making productions each month at the end of the month, beginning on February 28, 2020." *Id.*

Consistent with that order, the FBI resumed its monthly productions in February 2020. Dkt. 89-2 at 6 (Seidel Decl. ¶ 12). Just as it did with its three prior productions, the FBI informed Matthews that "he owed $15.00 for [each] release," *id.* at 7 (Seidel Decl. ¶ 12), and that failure to pay would prompt the FBI to close any pending FOIA requests, *id.* at 45 (Seidel Decl., Ex. D). Shortly thereafter, the onset of the Covid-19 pandemic temporarily halted FOIA operations at the FBI and prompted the agency to seek a stay. *See* Dkt. 80. The Court granted that stay, which remained in effect until the FBI's FOIA staff was "permitted to resume [its] usual record processing functions." Minute Order (Mar. 31, 2021). The FBI, as a result, did not make its next production until May 2020. *See* Dkt. 83 at 1. The FBI made one more production,

in June 2020.  Dkt. 89-2 at 7 (Seidel Decl. ¶ 14).  To this day, however, Matthews has not paid

the fees he owes for the records that the FBI released in February 2020, May 2020, or June 2020.

*Id.* at 8 (Seidel Decl. ¶ 15); *see id.* at 58 (Seidel Decl., Ex. G) (notifying Matthews, following the

June 2020 production, that he had "a total amount due of $45.00").

Due to these outstanding fees, the FBI ceased its processing and release of responsive

documents and requested a summary judgment briefing schedule, Dkt. 85, which this Court set,

Minute Order (Aug. 27, 2020).  The FBI moved for summary judgment, Dkt. 89, and, in support,

submitted declarations from Michael Seidel, the Section Chief of the Record/Information

Dissemination Section of the FBI, Dkt. 89-2 at 1 (Seidel Decl. ¶ 1), and Justin Wilkinson, an

Attorney-Advisor with the EOUSA, Dkt. 89-3 at 67 (Wilkinson Decl. ¶ 1).  Matthews opposed

the FBI's motion, Dkt. 91, and the FBI has replied, Dkt. 92.

## II.  LEGAL STANDARD

The Freedom of Information Act mandates that an agency disclose records on request,

unless they fall within one of nine exemptions.  "These exemptions are explicitly made exclusive

and must be narrowly construed."  *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (citation

and quotation marks omitted).  "FOIA cases are typically resolved on motions for summary

judgment under Federal Rule of Civil Procedure 56."  *Shapiro v. U.S. Dep't of Justice*, 153 F.

Supp. 3d 253, 268 (D.D.C. 2016).  To prevail on a summary judgment motion, the moving party

must demonstrate that there are no genuine issues of material fact and that he or she is entitled to

judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).  "In a FOIA action, the Court may award summary judgment to an agency solely on

the basis of information provided in affidavits or declarations that describe. . . 'the justifications

for nondisclosure [of records] with reasonably specific detail . . . and are not controverted by

10

either contrary evidence in the record nor by evidence of agency bad faith.'" *Thomas v. FCC*,

534 F. Supp. 2d 144, 145 (D.D.C. 2008) (alteration in original) (quoting *Military Audit Project v.

Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  The Court reviews the agency's determinations *de

novo*, and the agency bears the burden of sustaining its actions.  5 U.S.C. § 552(a)(4)(B).

## III.  ANALYSIS

The FBI advances three arguments in support of its current motion for summary

judgment.  First, it maintains that the information withheld from Matthews's "197 file" was

"exempt from disclosure pursuant to Exemptions 6 and 7(C)."  Dkt. 89-1 at 11.  Second, the FBI

argues that it properly withheld information from Plaintiff's "main file" pursuant to Exemption

7(D).  *Id.* at 18.  Third, it argues that it is entitled to summary judgment with respect to records

first processed after the Court's March decision because Plaintiff failed to "pay fees associated

with the FBI's February, May, and June 2020 releases" and, thus, failed "to exhaust his

administrative remedies."  *Id.* at 24.  The Court will address each argument in turn.

### A.     Exemptions 6 and 7(C)

The Court begins with the FBI's withholdings under Exemptions 6 and 7(C).  Invoking

those exemptions, the FBI seeks to withhold (1) the names and identifying information of FBI

support personnel who handled ministerial tasks associated with the investigation of Matthews's

FTCA claims; (2) the names and telephone numbers of the AUSA assigned to Matthews's

criminal prosecution and of a Probation Office employee; and (3) the full victim impact

statement associated with Matthews's criminal prosecution in the Eastern District of Virginia.

*Id.* at 13–14; *see also* Dkt. 89-2 at 13–14 (Seidel Decl. ¶¶ 28–29); *id.* at 89-3 at 5 (Wilkinson

Decl. ¶ 14).  Although Matthews does not directly challenge the FBI's invocation of these

exemptions, *see* Dkt. 91, the Court will nevertheless "verify the validity of each" to ensure the

agency has carried its "burden . . . of proving the applicability of [its] claimed statutory exemptions," *Summers v. U.S. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998).

To justify these withholdings, the FBI relies principally on Exemption 6, which shields "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The presence of "personal, identifying information," on its own, "is not enough to invoke Exemption 6;" instead, the information must be "of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion."  *Judicial Watch, Inc. v. U.S. Dep't of State*, 282 F. Supp. 3d 36, 49–50 (D.D.C. 2017) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)).  To make that determination, the Court first must evaluate whether "disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest," *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989), and then "balance the privacy interest in non-disclosure against the public interest" in disclosure, *Consumers' Checkbook, Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009).

The FBI relies, in the alternative, on Exemption 7(C), Dkt. 89-1 at 12–13, which "is more protective of privacy than Exemption 6' and thus establishes a lower bar for withholding material," *ACLU v. U.S. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011) (quoting *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 496 n.6 (1994)).  Notably, "[u]nlike [under] Exemption 6, the balance is not tilted emphatically in favor of disclosure under Exemption 7(C)." *Jefferson v. Dep't of Just., Off. of Pro. Resp.*, 284 F.3d 172, 180 (D.C. Cir. 2002).  This is so for two reasons. First, while Exemption 6 is available only if the disclosure "would constitute a *clearly* unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6) (emphasis added), "[t]he adverb 'clearly' . . . is not used in Exemption 7(C)," *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S.

157, 165–66 (2004).  And, second, while "Exemption 6 refers to disclosures that '*would* constitute' an invasion of privacy, Exemption 7(C) encompasses any disclosure that '*could* reasonably be expected to constitute' such an invasion."  *U.S. Dep't of Justice v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989) (emphases added).  To justify withholding under either exemption, however, the agency must identify a substantial privacy interest, and the D.C. Circuit has "deemed the privacy inquiry of Exemptions 6 and 7(c) to be essentially the same."  *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1125 (D.C. Cir. 2004).[4]

The Court previously faulted the FBI for failing to provide the information necessary to conduct this analysis, including "details about which categories of individuals appeared in the 197 file, or the types of records from which the names and identifying information were redacted."  Dkt. 64 at 16–17.  Without this "basic information," the Court could not "ascertain whether the release of these names and identifying information would compromise a substantial privacy interest," *id.* at 17, much less weigh any such "'privacy interest in non-disclosure against the public interest in disclosure,'" *id.* at 13 (quotation marks omitted).

With respect to the FBI's "redaction of the identities of support personnel who perform[ed] clerical or administrative duties," Dkt. 89-1 at 15, the Court concludes that the FBI has now provided the necessary detail to justify its withholdings.  According to the FBI's supplemental filings, these support personnel "handled tasks to open the 197 file and forwarded instructions to other personnel for further action in the investigation of Plaintiff's claims."  Dkt. 89-2 at 13 (Seidel Decl. ¶ 28).  These individuals have "substantial privacy interests" in the non-

---

[4] Exemption 7(C) requires a separate showing, that the disputed "records or information [were] compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7)(C).  The Court need not address that issue here, however, because—as described below—the FBI's withholdings as to its support personnel are proper under Exemption 6, and the agency has failed to demonstrate the substantial privacy interested required to necessitate further inquiry as to its remaining withholdings.

disclosure of their identities, according to Seidel, because they "have access to information regarding official law enforcement investigations," and so "may become targets of harassing inquiries for unauthorized access to information regarding investigations if their identities were released." *Id.* at 13–14 (Seidel Decl. ¶¶ 29–30). Targets of FBI investigations, moreover, "may seek revenge on the support personnel involved." *Id.* at 14 (Seidel Decl. ¶ 30).

The concerns raised in the Seidel declaration are consistent with "'Congress'[s] primary purpose in enacting Exemption 6'—and, by extension 7(C)," which "'was to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information.'" *Bernegger v. Exec. Off. for U.S. Att'ys*, 334 F. Supp. 3d 74, 89 (D.D.C. 2018) (quoting *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982)). The dangers Seidel describes are more than "*de minimis*," *Horner*, 879 F.2d at 874—instead, they represent "the very real risks of adverse publicity, harassment, or revenge" that would arise if support personnel's identities are disclosed, Dkt. 89-2 at 14 (Seidel Decl. ¶ 28). Throughout this litigation, Matthews has repeatedly identified government officials—including FBI special agents and prosecutors—whom he asserts have engaged in misconduct. *See, e.g.*, Dkt. 1 at 2 (Compl. ¶ 4); Dkt. 59 at 2–3; Dkt. 91 at 1. And where disclosure of identifying information poses an articulable risk of harassment or retaliation, this Court has had little difficulty in recognizing a "cognizable privacy interest" for purposes of Exemption 6. *Bernegger*, 334 F. Supp. at 89. Given that FBI support personnel may, among other things, "become targets of harassing inquiries . . . if their identities [ar]e released," the Court is persuaded that the support personnel possess "substantial privacy interests" in their identifying information. Dkt. 89-2 at 13–14 (Seidel Decl. ¶ 29).

Matthews, in turn, identifies no countervailing "public interest" that might weigh in favor of disclosure. *Consumers' Checkbook*, 554 F.3d at 1050.  He asserts that the public has a compelling interest in "finding out exactly what the government was up to in obstructing the course of justice during [his] 2255 proceeding." Dkt. 91 at 2 (quotation marks omitted).  He does not explain, however, how the identity of support personnel who perform clerical and administrative duties has anything to do with that asserted interest. *See* Dkt. 89-2 at 13 (Seidel Decl. ¶ 28).  The Court concludes, accordingly, that the FBI properly withheld the names and identifying information of FBI support personnel within Matthew's 197 File.[5]

The FBI's remaining withholdings under Exemptions 6 and 7(C), however, are less clearly supported on the present record.  These withholdings include "the names and phone numbers of an AUSA and employee from the parole office who were communicating regarding [Matthews's] presentence report," Dkt. 89-1 at 16, along with the entirety of "the victim impact statement associated with [Matthews's] criminal prosecution in the Eastern District of Virginia with docket number 11-CR-00087," *id.* at 14.  The only explanation of the privacy interest at stake is found in the following paragraph from the Wilkinson declaration:

> In addition, EOUSA has withheld information to uphold privacy interests of individuals or private entities named that may have been involved in[,] or victims of crimes related to[,] the Matthews investigation.  The disclosure of [personal identifiable information] could subject individuals to an unwarranted invasion of their personal privacy by leading to efforts to contact them directly or subject them to harassment or harm.  In addition, release of this information might lead to retaliation against those individuals identified as being connected in some way to this investigation, and could unfairly cause damage to those individuals' careers and reputations.

---

[5] Although the FBI maintains that Matthews's 197 file is, in its entirety, a "similar file" for purposes of invoking Exemption 6, Dkt. 89-1 at 8–9, the Court need not decide that question. "Exemption 6 protection not only relates to entire physical files, but also encompasses bits of personal information that refer to a particular individual," including "a person's name, address, place of birth, employment history, and telephone number." *Jud. Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 141 (D.D.C. 2014)(quotation marks omitted).

Dkt. 89-3 at 5 (Wilkinson Decl. ¶ 15); *see also id.* at 8 (*Vaughn* index).   Relying on these representations, the FBI maintains that "[t]he same analysis applied to FBI support personnel applies to these individuals."  Dkt. 89-1 at 16.  The Court cannot agree.

To be sure, the Court has previously recognized that prosecutors may enjoy a privacy interest in the non-disclosure of their names and contact information, *see, e.g.*, *Bernegger*, 334 F. Supp. 3d at 89, and, indeed, if anything, the risk of harassment and retribution is likely greater for prosecutors than for administrative staff.  Similar logic may justify the withholding of a probation officer's identifying information.  *See Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 184 (D.D.C. 2012).  But "a bare assertion that a document's 'disclosure would constitute a clearly unwarranted invasion of [an individual's] personal privacy' is not sufficient to establish that a substantial privacy interest in preventing disclosure exists."  *Dep't of the Navy*, 25 F. Supp. 3d at 142 (alteration in original) (quoting *Morley v. CIA*, 508 F.3d 1108, 1127–28 (D.C. Cir. 2007)); *see also Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 116 (D.D.C. 2005) ("The fact that federal employees have an identifiable privacy interest in avoiding disclosures of information that could lead to annoyance or harassment, however, does not authorize a 'blanket exemption' for the names of all government employees in all records." (quoting *Baez v. U.S. Dep't of Justice*, 647 F.2d 1328, 1338 (D.C. Cir. 1980)).

Here, the FBI's reliance on Exemptions 6 and 7(C) to protect the identity of the AUSA and the probation office employee at issue faces at least two difficulties.  First, Matthews's criminal case proceeded publicly, and an AUSA—perhaps the same AUSA in dispute here— undoubtedly appeared, both on the record and in court.  Someone from the probation office likely appeared at Matthews's sentencing as well, and the Court has no way of knowing whether that individual is the one whose identity is now at issue.  Second, the FBI's evidentiary

showing—a single paragraph in a declaration—is unduly thin, particularly in light of the possibility that the AUSA and the probation officer have, unlike the FBI's support personnel, already been publicly associated with Matthews's criminal case. "[T]he potential adverse consequences" of disclosure "must be real rather than speculative," *Dep't of the Navy*, 25 F. Supp. 3d at 142 (quotation marks omitted), and Wilkinson says only that "disclosure . . . *could* subject individuals to an unwarranted invasion of their personal privacy;" "*might* lead to retaliation against those individuals identified;" and "*could* unfairly cause damage to those individual's careers and reputations." Dkt. 89-3 at 5 (Wilkinson Decl. ¶ 15) (emphases added).

At least on the present record, therefore, the Court is unpersuaded that the FBI has carried its burden of demonstrating that disclosing the identity of the ASUA, or of the probation office employee, would threaten a substantial privacy interest. Perhaps the AUSA at issue was not a member of the public trial team, and perhaps the identity of the probation office employee was never disclosed as part of Matthews's criminal prosecution. Perhaps the FBI is concerned that further publicizing the names of those individuals could lead to harassment. Perhaps there is something about the content of the communication itself that raises unique privacy concerns. Perhaps the FBI is most concerned with protecting the AUSA and the probation office employee's contact information, rather than their identities. But neither the Wilkinson declaration nor any other submission from the FBI says any of this—or anything else that would support the agency's claim that "disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest," *Horner*, 879 F.2d at 874. And because a substantial privacy interest is required under Exemptions 6 and 7(C), *see Dep't of the Navy*, 365 F.3d at 1125, the Court must deny the FBI's motion for summary judgment with respect to the names and phone numbers of the AUSA and probation office employee.

Based on the sparse evidentiary record, the Court is also unable to conclude that the FBI has carried its burden with respect to the victim impact statement from Matthews's criminal case. *See* Dkt. 89-1 at 14.  To be sure, it seems likely that the victim impact statement is deserving of protection—Congress itself has recognized that "[a] crime victim has . . . the right to be treated with fairness and with respect for the victim's dignity and privacy."  18 U.S.C. § 3771(a)(1)(8). And, in the normal course, victim impact statements are filed under seal as part of the presentence report.  If that were the case, and assuming those statements were not read in open court, their release would likely trigger the kind of "the injury and embarrassment that can result from the unnecessary disclosure of personal information."  *Wash. Post. Co.*, 456 U.S. at 599. The difficulty, however, is that the FBI has failed to offer *any* evidence to this effect; the government offers only the single, unenlightening paragraph from the Wilkinson declaration described above.  Dkt. 89-3 at 5 (Wilkinson Decl. ¶ 15).

Indeed, on the present record, the Court cannot even discern the specific nature of the withheld record.  Although the FBI's brief refers to a "victim impact statement," Dkt. 89-1 at 14, the *Vaughn* index describes the record as "[c]ommunications between the U.S. Attorney's Office for the Eastern District of Virginia and [v]ictims related to the Matthews investigation," Dkt. 89-3 at 8 (*Vaughn* Index).  The Court can only guess as to whether the record contains statements from the U.S. Attorney's Office, from a victim or victims, or both.  The FBI's submissions likewise leave the Court in the dark as whether the "[c]ommunications" describe the "impact" of the crime—as the FBI asserts in its brief but not in the *Vaughn* index—or, instead, relate to other subjects, such as the logistics of sentencing, the rights of victims under the Crime Victims' Rights Act, or the substance of the investigation.  In this posture, the Court must conclude that the FBI has failed to demonstrate that the withholdings at issue further a substantial privacy

18

interest for purposes of Exemptions 6 or 7(C).  *Cf. Horner*, 879 F.2d at 874.  The Court will,

accordingly, deny the FBI's motion for summary judgment as to the victim impact statement

associated with Matthews's criminal prosecution.

**B.     Exemption 7(D)**

The Court next turns to the FBI's invocations of Exemption 7(D).  That exemption

authorizes the withholding of documents "compiled by criminal law enforcement authorities in

the course of criminal investigations" that "could reasonably be expected to disclose the identity

of, as well as information provided by, a confidential source."  *Cooper v. Dep't of Justice*, 169 F.

Supp. 3d 20, 39 (D.D.C. 2016) (quoting *Comput. Pros. for Soc. Resp. v. U.S. Secret Serv.*, 72

F.3d 897, 905 (D.C. Cir. 1996)).  Whether the FBI can claim Exemption 7(D) "depends upon

whether the particular source who furnished the information at issue was granted confidentiality,

either expressly or by implication."  *Id.* (quoting *Mays v. Drug Enf't Admin.*, 234 F.3d 1324,

1328 (D.C. Cir. 2000)).  "[W]hen circumstances such as the nature of the crime investigated and

[the informant's] relation to it support an inference of confidentiality, the [FBI] is entitled to a

presumption" of implied confidentiality.  *Mays*, 234 F.3d at 1329 (second alteration in original).

To make this determination, the Court is to consider the following:

> the character of the crime at issue, the source's relation to the crime, whether
> the source received payment, and whether the source has an ongoing
> relationship with the law enforcement agency and typically communicates with
> the agency only at locations and under conditions which assure the contact will
> not be noticed.

*Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1184 (D.C. Cir. 2011) (quotations marks omitted).

The FBI invokes Exemption 7(D) with respect to seven individuals identified in

Matthews's "main file" who, according to the Seidel, "provided relevant singular, non-public

information to the FBI."  Dkt. 89-2 at 19 (Seidel Decl. ¶ 44).  This Court previously held that the

FBI permissibly invoked this exemption to shield from disclosure information about an "informant who agreed to provide an informal proffer," in part based on "[t]he seriousness of [Matthews's] offense and the resulting punishment," which "weigh in favor of finding cooperator confidentiality." Dkt. 64 at 19 (quoting *Marck v. Dep't of Health & Human Servs.*, 314 F. Supp. 3d 314, 328 (D.D.C. 2018)). As to the other individuals, the FBI's evidence, including its supporting declarations, were insufficient to show that each "operated under an implied understanding of confidentiality," particularly "absent evidence that all of the sources were similarly situated." Dkt. 64 at 20. To fill this gap in the evidentiary record, the FBI relies on the Seidel declaration, which describes each of the seven individuals and the relevant "circumstances" which "giv[e] rise to an inference of confidentiality." Dkt. 89-2 at 19 (Seidel Decl. ¶ 43).

Although the Seidel declaration does not offer a great deal of detail, the Court concludes that it is sufficient to carry the FBI's burden. One of the factors identified by the D.C. Circuit— "the character of the crime at issue," *Roth*, 642 F.3d at 1184—continues to weigh in favor of confidentiality, *see* Dkt. 64 at 19 (noting that "[t]he crimes at issue included bank fraud and wire fraud (based on Matthews's mortgage and investment fraud schemes), which resulted in his sentence of 120-months' incarceration and five-million dollars in restitution"). And as for "the source's relation to the crime," *Roth*, 642 F.3d at 1184, six of the seven individuals at issue maintained either a "close association" or a "long-term association" with "one or more targets of the investigation," Dkt. 89-2 at 20 (Seidel Decl. ¶ 44(a)–(g))—a fact this Court has previously found persuasive under Exemption 7(D), *see* Dkt. 64 at 19 (noting that the FBI's prior declarant "attests that [the informant] had a close relationship with the target(s)"). One individual, moreover, "provided information pursuant to a proffer agreement," Dkt. 89-2 at 20 (Seidel Decl.

¶ 44(a)), while two others "provided information pursuant to a federal grand jury subpoena," *id.* (Seidel Decl. ¶ 44(b)–(c)).  Although Seidel says nothing about payment of these individuals, this factor "is not itself dispositive."  *Labow v. U.S. Dep't of Justice*, 831 F.3d 523, 532 (D.C. Cir. 2016).  The Court concludes that this evidence is sufficient to support the FBI's invocation of Exemption 7(D).

\*   \*   \*

Before granting summary judgment to the FBI with respect to these withholdings, the Court must first discharge its "affirmative" duty to consider whether the FBI produced all segregable, non-exempt information.  *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  FOIA requires that the FBI engage in reasonable efforts to "segregate and release nonexempt information," 5 U.S.C. § 552(a)(8)(A)(ii)(II), and "[i]t is the government that bears the burden of justifying the non-disclosure of records, including on the ground that non-exempt records are not reasonably segregable," *Shapiro v. U.S. Dep't of Just.*, 153 F. Supp. 3d 253, 287 (D.D.C. 2016).  To carry this burden, the FBI must demonstrate "with 'reasonable specificity' why the documents cannot be further segregated."  *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996).

Here, both Seidel and Wilkinson describe the FBI's efforts to produce all segregable, non-exempt information.  As for the redactions made by the FBI, Seidel declares that the FBI determined one page "could be released in part with redactions," as that page included "a mixture of material that could be segregated for release and material that was withheld" without "trigger[ing] [any] foreseeable harm to one or more interests protected by the cited FOIA exemptions."  Dkt. 89-2 at 22 (Seidel Decl. ¶ 48(b)).  Five pages, however, "required redaction in their entirety" because "any non-exempt information on these pages was so intertwined with

exempt material [that] no information could be reasonably segregated for release." *Id.* at 22–23 (Seidel Decl. ¶ 48(c)). Twelve pages "could be released in full without redaction as there was no foreseeable harm to an interest protected by a FOIA exemption." *Id.* at 22 (Seidel Decl. ¶ 48(a)). With respect to those redactions recommended by the EOUSA, Wilkinson attests that he "conducted a detailed, line-by-line review to satisfy EOUSA's reasonable segregability obligations," and determined that "EOUSA has released all reasonably segregable non-exempt information from records responsive to [Matthews's] FOIA requests." *Id.* at 72 (Wilkinson Decl. ¶¶ 19–20).

Matthews does not challenge the FBI's segregability analysis, and the Court has no reason to doubt the agency's good-faith representations. The Court, accordingly, is satisfied that the agency has produced all segregable, non-exempt records with respect to the pages the FBI re-processed within Matthews's 197 file following the Court's prior decision.

## C.    Exhaustion

The Court concludes with the FBI's reliance on exhaustion. The agency argues that because Matthew has failed to pay some of the required FOIA processing fees, he has "fail[ed] to exhaust his administrative remedies" and therefore it is "entitled to summary judgment." Dkt. 89-1 at 24. The Court agrees with the FBI, but only for those productions for which Matthews has not paid; because Matthews has, in fact, paid for three productions in 2019, *see* Minute Order (Jan. 6, 2020), the FBI may not rely on exhaustion with respect to those productions.

FOIA authorizes each agency to "promulgate regulations . . . specifying the schedule of fees applicable to the processing of requests . . . and establishing procedures and guidelines for determining when such fees should be waived or reduced." 5 U.S.C. § 552(a)(4)(A)(i). As relevant here, the Department of Justice has issued a fee schedule governing FOIA requests,

which imposes—among other things—"[d]uplication fees" for most requesters.  28 C.F.R. § 16.10(c)(2); *see id.* § 16.10(b)(3) (defining "[d]uplication" as "reproducing a copy of a record, or of the information contained in it, necessary to respond to a FOIA request").  "Where a requester has previously failed to pay a properly charged FOIA fee . . . within 30 calendar days of the billing date," the FBI "may require that the requester pay the full amount due . . . before the [FBI] . . . continues to process a pending request."  *Id.* § 16.10(i)(3).  "Requesters may," however, "seek a waiver of fees by submitting a written application" making certain showings. *Id.* § 16.10(k)(1).  Such a request "should be made when the request is first submitted."  *Id.* § 16.10(k)(4).

Failure to pay the fees required under FOIA and its implementing regulations amounts to a failure to exhaust, as "[e]xhaustion does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 66 (D.C. Cir. 1990).  And because "[e]xhaustion of administrative remedies is generally required before seeking judicial review," *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004), "[a] plaintiff seeking to bring a FOIA suit in federal court must generally exhaust her administrative remedies before filing suit," *Bartko v. U.S. Dep't of Just.*, No. 17-cv-781, 2018 WL 4608239, at *12 (D.D.C. Sept. 25, 2018); *accord Pinson v. U.S. Dep't of Just.*, 18-cv-486, 2020 WL 1509517, at *15 (D.D.C. Mar. 30, 2020) (same).

Although this principle most commonly applies when the FOIA requester fails to pay processing fees imposed *prior* to filing suit, *see, e.g.*, *Judicial Watch, Inc. v. FBI*, 190 F. Supp. 2d 29, 33 (D.D.C. 2002), "[t]he fact that a fee request was made after the Plaintiff commenced litigation does not excuse the Plaintiff from paying the requested fees," *Rosenberg v. ICE*, 954 F. Supp. 2d 1, 10 (D.D.C. 2013) (collecting cases).  The D.C. Circuit has yet to address the question

of exhaustion in this context—the nonpayment of fees imposed after the filing of a lawsuit—but, like other courts to address the issue, this Court sees little logic to a rule under which, once a FOIA requester "commence[s] an action in court to enforce his FOIA request, he [i]s relieved of any obligation to pay for documents." *Pollack v. U.S. Dep't of Just.*, 49 F.3d 115, 119 (4th Cir. 1995); *see also Marcusse v. U.S. Dep't of Just. Off. of Info. Pol'y,* 959 F. Supp. 2d 130, 141 (D.D.C. 2013); *Espinoza v. U.S. Dep't of Just.*, 20 F. Supp. 3d 232, 243 (D.D.C. 2014).

Relying on these principles, the FBI maintains that it is entitled to summary judgment on the ground that Matthews has failed to pay all of the required processing fees. Dkt. 89-1 at 22–24. And, indeed, the FBI has introduced undisputed evidence that Matthews has not paid the $45.00 he owes for the FBI's productions in February 2020, May 2020, and June 2020. Dkt. 89-2 at 8 (Seidel Decl. ¶ 15); *see also id.* at 58 (Seidel Decl. Ex. G) (notifying Matthews, following the June 2020 production, that he had "a total amount due of $45.00" for these three productions). As to those three productions, then, the Court will grant summary judgment to the FBI and will relieve the agency of its "burden of justifying the non-disclosure of records" as part of those productions. *Shapiro*, 153 F. Supp. 3d at 287.

But exhaustion cannot alleviate this burden for *all* of the FBI's recent productions, as the FBI itself has "confirm[ed] that it has [] received Plaintiff's overdue fee payment, which covered the interim productions [the FBI] made in July, August, and September 2019." Dkt. 78 at 1; *see also* Dkt. 77 at 3 (receipt for this payment). In light of these payments, which the FBI apparently accepted, the agency cannot resort to exhaustion to fend off Plaintiff's claims with respect to all documents processed for release following the Court's March 2019 opinion, Dkt. 64. But, although the FBI's motion offers little clarity on this point, Dkt. 89-1 at 24, that appears to be the agency's position. Indeed, Seidel asserts that due to "Plaintiff's failure to pay fees[,] . . .  the

FBI's withholdings in the following releases are not at issue at this time: July 29, 2019; August 30, 2019; September 30, 2019; February 28, 2020; May 27, 2020; and June 30, 2020." Dkt. 89-2 at 4 (Seidel Decl. ¶ 8 n.3).  The Court cannot agree.  Just as the filing of a lawsuit does not alleviate a FOIA plaintiff's obligations to pay subsequently imposed FOIA processing fees, *see Pollack*, 49 F.3d at 119, such a plaintiff's failure to pay the fees associated with *one* production does not grant the agency license to forgo explanation of *all* other productions and withholdings.

Because Matthews has paid the fees associated with the July 2019, August 2019, and September 2019 productions, Dkt. 78 at 1, the FBI's withholdings in those releases are not shielded by exhaustion.  And because the agency has relied exclusively on exhaustion in seeking summary judgment as to those productions, Dkt. 89-1 at 22–24, the Court must deny the FBI's motion regarding those the releases made in July 2019, August 2019, and September 2019.

## CONCLUSION

For the foregoing reasons, the FBI's motion is **GRANTED** in part and **DENIED** in part. The motion is **DENIED** with respect the FBI's withholdings of the names and phone numbers of the AUSA and probation office employee associated with Matthews's criminal prosecution, along with the victim impact statement related to that same prosecution.  The motion is also **DENIED** with respect to the FBI's withholdings in its July 2019, August 2019, and September 2019 releases, given that the FBI may not rely on the sole argument it made to justify those withholdings—*i.e.*, exhaustion.  In all other respects, however, the motion is **GRANTED**.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  December 9, 2021